**Not for Publication**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                    :

LEENA VARUGHESE, M.D.,          :       Civil Action No. 16-02828 (FLW)(LHG)
                                    :

                Plaintiff,      :

                                    :               **OPINION**

    v.                            :

                                    :

ROBERT WOOD JOHNSON MEDICAL   :
SCHOOL; MICHAEL KELLY, M.D.;     :
BILLIE FYFE-KIRSCHNER, M.D.; JOHN :
AND/OR JANE DOES; and ABC        :
CORPORATIONS 1-10,             :

                                    :

               Defendants.    :
_____ :

## Hon. Freda L. Wolfson, U.S.D.J.:

Before the Court is the motion of Defendants Rutgers Robert Wood Johnson Medical School ("RWJMS"), Michael Kelly, M.D. ("Defendant Kelly"), and Billie Fyfe-Kirschner, M.D. ("Defendant Fyfe-Kirschner") (collectively, "Defendants"), to dismiss the Amended Complaint of _pro se_ Plaintiff Leena Varughese ("Plaintiff"), for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), and for failure to join a necessary party, pursuant to Fed. R. Civ. P. 12(b)(7). In her Amended Complaint, Plaintiff alleges that Defendants violated 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), the New Jersey Law Against Discrimination ("NJLAD"), the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), and 18 U.S.C. § 241, by altering a job posting for a medical residency in order to exclude Plaintiff from eligibility and by failing to hire Plaintiff as a medical resident for the advertised position. For the reasons set forth below, Plaintiff has failed to state a claim, Defendants' motion to dismiss under Rule 12(b)(6) is granted, and the Amended Complaint is dismissed in its entirety. Count I (Title VII Retaliation) as raised against Defendant RWJMS,

Count II (§ 1981 Retaliation and Discrimination) as raised against all Defendants, Count III

(NJLAD Retaliation) as raised against all Defendants, and Count IV (Civil RICO) as raised

against all Defendants, are dismissed without prejudice, and Plaintiff is granted leave to amend

these counts within thirty (30) days.[1] Count I (Title VII Retaliation) as raised against Defendants

Kelly and Fyfe-Kirschner, and Count V (§ 241) as raised against all Defendants are dismissed

with prejudice. Because the court dismisses the Complaint on other grounds, the issue of joinder

under Rule 12(b)(7) is moot.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

     Plaintiff is a licensed medical doctor in New York State. Am. Compl. ¶ 10. Defendant

RWJMS is a teaching institution, which hires post-graduate physicians for its residency training

programs. *Id.* at ¶ 7. Defendant Kelly is the Associate Dean of Graduate Medical Education at

RWJMS. *Id.* at ¶ 8. Defendant Fyfe-Kirschner was, at all times during the events alleged in the

Amended Complaint, the Program Director of the Anatomic and Clinical Pathology Program at

RWJMS. *Id.* at ¶ 9.

     Plaintiff completed three years and three months of a four-year residency program in

Anatomic and Clinical Pathology at Mount Sinai Hospital in New York City ("Mount Sinai"),[3]

from June 2008 to September 21, 2011. *Id.* at ¶¶ 11, 21 n. 4. According to Plaintiff, she

completed all of her patient care work competently and satisfactorily, *id.* at ¶ 10, but during the

---

[1] See discussion in Section III(F), *infra*.

[2] For the purposes of the present motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), the Court accepts the following allegations pleaded in the Amended Complaint as true and views them in the light most favorable to Plaintiff. *Evancho v. Fisher,* 423 F.3d 347, 351 (3d Cir. 2005).

[3] Mount Sinai is referenced in the Complaint as "Mount Sinai," "Mount Sinai Hospital," "Mount Sinai Medical Center," and "Mount Sinai Health System." Because Mount Sinai is not a party to this action, the precise legal entity named by Plaintiff is not relevant to the present motion.

final year of her residency, Mount Sinai "took retaliatory actions" against Plaintiff and made "various implausible allegations" against her, which resulted in Plaintiff's termination and expulsion from the residency program.[4] *Id.* at ¶ 21 n. 3, 21 n. 4. Mount Sinai possesses and maintains the records of the work that Plaintiff completed during her residency. *Id.* at ¶ 11.

After being terminated by Mount Sinai, Plaintiff applied for a position in the Pathology Residency Program at RWJMS on three occasions: in January 2012, May or June 2015, and September 2015. *Id.* at ¶ 12. The gravamen of the Amended Complaint concerns events surrounding Plaintiff's second application in May or June 2015. Plaintiff submitted an application at that time for a position in the Pathology Residency Program at RWJMS, which was advertised for the academic year running from July 2016 to June 2017. *Id.* at ¶¶ 12, 15. Plaintiff applied with the intent of completing the one remaining year of the Anatomic and Clinical Pathology Residency, which she did not finish at Mount Sinai. *Id.* at ¶ 12. The particular pathology residency position for which Plaintiff applied was reserved for non-traditional candidates, like Plaintiff. *Id.* at ¶ 14.

After applying for the July 2016 to June 2017 position, Plaintiff contacted Defendant Fyfe-Kirschner to inquire about the opening. *Id.* at ¶ 13. Defendant Fyfe-Kirschner referred Plaintiff to Defendant Kelly. *Id.* at ¶ 13. In or about May 2015, in the period shortly after Plaintiff had submitted her application,[5] Dr. Kelly informed Plaintiff that Robert Wood Johnson Medical School would not be funding the advertised position, nor any other additional position

---

[4] As discussed below, Plaintiff appears to claim that Mount Sinai retaliated against Plaintiff after Plaintiff filed an EEOC Complaint against Mount Sinai, then Plaintiff's employer.

[5] Earlier in the First Amended Complaint, Plaintiff alleges that she applied for the position at RWJMS in May or June of 2015. *Id.* at ¶ 12. The Court thus reads Plaintiff's allegation that her interaction with Defendant Kelly occurred in or around May 2015 to allege only that the interaction, logically, took place after she submitted her application.

for post-graduate medical training in any other residency program within the RWJMS

organization for the July 2016 to June 2017 period for which Plaintiff had applied. *Id.* at ¶ 15.

The advertisement for the pathology residency position was taken down, and Plaintiff was

informed, by Defendant Kelly or someone else within RWJMS, that no one else would be hired

due to an institution-wide lack of funding. *Id.* at ¶ 15.

In September 2015, however, RWJMS again advertised substantially the same

employment opportunity in the Pathology Residency Program for the period of July 2016 to June

2017. *Id.* at ¶ 16. Plaintiff contends that slight changes had been made to the eligibility

requirements in the advertisement in order to single out and exclude Plaintiff. *Id.* at ¶ 16.

Specifically, Plaintiff alleges that the new advertisement required Plaintiff to provide certain

additional information, which Plaintiff contends was not relevant to the position, rather than

requiring that Plaintiff's former employer, Mount Sinai Health System, provide such

information. *Id.* at ¶ 16.

Plaintiff then alleges that the "new advertisement was formulated with coordination of

illegal activities by RWJMS and it's actors and proxies, that may or may not include the illegal

collusion with Mount Sinai Medical Center in New York, but RWJMS's actors and proxies are

implicated in the illegal activities to exclude Varughese from professional class employment in

Anatomic and Clinical Pathology residency program to complete her remaining year of the 4

year residency program." *Id.* at ¶ 17. Plaintiff alleges that Mount Sinai, at some previous time,

refused to forward Plaintiff's employment records, and that any future employer to which

Plaintiff might apply would request Plaintiff's past employment records from Mount Sinai. *Id.* at

¶ 17. Plaintiff claims that, at some point in the past, she filed an EEOC complaint against Mount

Sinai and pursued civil litigation against Mount Sinai as her former employer, and that Mount

Sinai has retaliated against her by fabricating a false, poor performance evaluation and by refusing to forward the employment records in Mount Sinai's possession to potential employers to which Plaintiff has applied, "as their legal defense for unlawful activity." *Id.* at ¶ 17.

Plaintiff asserts that "Fyfe and RWJMS . . . have direct knowledge of this fact and their changing of the demands of applicants to an advertised employment opening is to exclude" Plaintiff. *Id.* at ¶ 17. Specifically, Plaintiff alleges that Defendant Fyfe-Kirshner had direct knowledge, at or around the period of Plaintiff's May/June 2015 job application, that Plaintiff had engaged in legally protected activities against her former employer, Mt. Sinai, in the past, including through the filing EEOC complaints and the pursuit of civil litigation. *Id.* at ¶ 18. Defendant Fyfe-Kirschner allegedly informed[6] Plaintiff that it was Defendant Fyfe-Kirschner's opinion, based on her information, experience, and knowledge, that Plaintiff's former employer's conduct toward Plaintiff was consistent with illegal discrimination and retaliation against Plaintiff. *Id.* at ¶ 19. Defendant Fyfe-Kirschner further allegedly informed Plaintiff that Defendant Fyfe-Kirschner did not think that the United States court system would condone the discriminatory activity or allow it to continue against Plaintiff. *Id.* at ¶ 19.

At some point after Plaintiff had filed her EEOC complaint against Mount Sinai, and after Plaintiff had applied for the position at RWJMS, Defendant Fyfe-Kirschner allegedly told Plaintiff that Mount Sinai "*demanded of RWJMS to not hire [Plaintiff] and that the record of her employment will not be given* because of a complaint and/or a lawsuit that was filed against them by [Plaintiff]." *Id.* at ¶ 20 (emphasis in original). The Amended Complaint explains that Mount

---

[6] Throughout the Amended Complaint, Plaintiff uses the ambiguous term "informed" to describe the manner in which she communicated with and received information from Defendants. It is not clear from the allegations in this pleading whether, in any given context, "informed" should be read to refer to spoken or written communication.

Sinai refused to provide RWJMS with Plaintiff's "work done and actual record," a file that consists of all of the rotations satisfactorily completed by Plaintiff during her time at Mount Sinai. *Id.* at ¶ 21 n. 4. Plaintiff alleges that, to her knowledge, she satisfactorily completed all of the rotations in which she was enrolled at Mount Sinai prior to her termination. *Ibid.*

Mount Sinai did, however, provide RWJMS, or at least Defendant Fyfe-Kirschner, with a copy of Plaintiff's "summative evaluation." *Id.* at ¶ 21. A "summative evaluation" contains an evaluation of a medical professional in six categories set forth by the Accreditation Council of Graduate Medical Education ("ACGME") upon the completion of a residency program. *Id.* at ¶ 21 n. 3. Plaintiff is critical of the "summative evaluation" process and alleges that it is "based on essentially meaningless terminology" created by the ACGME, an entity "that really is in the business of regulating Graduate Medical Education programs and not physicians employed in post-graduate training programs." *Ibid.* Plaintiff alleges that the "summative evaluation" in her case was composed "in order to retaliate against Varughese and to sabotage Varughese's professional career" by a team of employees at Mount Sinai Hospital System, such as the hospital's legal counsel, Human Resources director, and new hires, who were unqualified to review Plaintiff and lacked the knowledge and capability to review Plaintiff's professional work. *Id.* at ¶ 21.

After receiving the summative evaluation, Defendant Fyfe-Kirschner allegedly informed Plaintiff that Defendant Fyfe-Kirschner found Mount Sinai's "composition" of the summative evaluation to be "implausible." *Id.* at ¶ 21. On several occasions after Plaintiff's May/June 2015 application, Defendant Fyfe-Kirschner also allegedly informed Plaintiff that Plaintiff was the best candidate for the residency position at RWJMS. *Id.* at ¶ 18.

Despite the allegedly supportive comments from Defendant Fyfe-Kirschner, the Amended Complaint goes on to allege that "[i]ronically, the participation of Defendants to exclude Varughese is evidence of the ingrained systemic institutional character of discrimination in employment, especially in professional field of medicine, that can only be stopped with the authority of law," and that "the refusal to hire Varughese is due to the illegal coordination with Varughese's former employer to avoid requesting data on the work done and the actual record of Plaintiff." *Id.* at ¶¶ 19, 21.

The Amended Complaint concludes with two vague denunciations of RWJMS in the context of a broad, overarching conspiracy against Plaintiff.

> Since the termination of Varughese's employment in September 2011 to now, Varughese has been excluded, in coordination with her former employer at Mount Sinai Hospital System located in New York City, from other "White" or "Caucasian" owned and operated business, with consent from "White" individuals of uninvolved organizations such as from Robert Wood Johnson Medical School to facilitate impermissible retaliation against Varughese to blacklist her from her chosen profession.

Am. Compl. ¶ 22.

> Varughese has discussed employment civil rights issues openly and publicly as part of her civil rights activism on employment rights for women of color, people of color, and women professionals in medicine. On information, evidence, and belief, there is an increasing level of alarm about Varughese's certain success in her chosen profession with equal access to employment opportunities (that would most certainly negatively affect her racist sexist former employer and their white proxies) to such an extent that RWJMS is participating in retaliation by participating in blacklisting and related activities against Varughese to exclude her from her professional field of practice in Medicine.

*Id.* at ¶ 23. Plaintiff was not hired by RWJMS for the Pathology Residency Program, or in any other capacity. *Id.* at ¶ 21.

On May 18, 2016, Plaintiff initiated the instant action by filing a Complaint against Defendants Fyfe-Kirschner and Kelly, as well as Robert Wood Johnson University Hospital ("RWJUH"). On September 29, 2016, RWJUH moved to dismiss the Complaint on the grounds that Plaintiff had erroneously named the Hospital as a party, as evidenced by the fact that the

Complaint alleged conduct only by the legally distinct entity of RWJMS. Plaintiff opposed the motion, requested, in the alternative, leave to name the correct party, and requested that the Court appoint pro bono counsel to represent her. On November 11, 2016, the Court issued a Letter Order, granting Robert Wood Johnson University Hospital's motion to dismiss, granting Plaintiff leave to amend to name RWJMS, and denying Plaintiff's insufficiently supported request for pro bono counsel.

On November 29, 2016, Plaintiff filed the Amended Complaint in this action, naming RWJMS, Fyfe-Kirschner, and Kelly as defendants, and raising five causes of action against all Defendants. In Count I, Plaintiff alleges that Defendants retaliated against her in violation of Title VII. In Count II, Plaintiff alleges that Defendants' conduct constitutes a violation of Plaintiff's civil rights under 42 U.S.C. § 1981. The Amended Complaint does not specify whether Plaintiff intends to raise her § 1981 claim under a discrimination or retaliation theory, so the Court, mindful that Plaintiff is proceeding *pro se*, construes it as raising both. In Count III, Plaintiff alleges that Defendants retaliated against her in violation of NJLAD. In Count IV, Plaintiff alleges that Defendants' conduct constitutes a RICO violation. Again, Plaintiff does not specify under which section of the civil RICO statute she intends to proceed, so the Court shall construe Plaintiff's allegations broadly. Finally, in Count V, Plaintiff alleges that Defendants criminally retaliated against her in violation of 18 U.S.C. § 241.

On February 22, 2017, Defendants moved to dismiss the Amended Complaint. In their motion, Defendants argue (i) that, pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff fails to state a claim against them because Counts I, II, III, and IV fail to plead necessary elements of their respective causes of action, the cause of action in Count I (Title VII retaliation) is time-barred, and the criminal statute invoked in Count V (18 U.S.C. § 241) does not allow for a private right

of action; and (ii) that Plaintiff's Complaint must be dismissed, pursuant to Fed. R. Civ. P.

12(b)(7), for failure to join Mount Sinai Medical Center as a necessary party to this action. In

opposition, Plaintiff makes no legal arguments, cites no statutory or case law, and does not

otherwise directly respond to Defendants' arguments. Instead, Plaintiff reiterates her allegations,

and expands upon the alleged conspiracy against her to include defense counsel, the district

judge in her separate case against Mount Sinai in the Southern District of New York, and

potentially this Court. On this motion to dismiss, however, the Court will nevertheless construe

the facts in the manner most favorable to Plaintiff and extend broad latitude to the claims in

Plaintiff's *pro se* Complaint while addressing each of Defendants' arguments in turn.

## II. STANDARD OF REVIEW

When considering a motion to dismiss a complaint for failure to state a claim upon which

relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded

allegations in the complaint as true and view them in the light most favorable to the plaintiff.

*Evancho,* 423 F.3d at 351. It is well settled that a pleading is sufficient if it contains "a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth

an intricately detailed description of the asserted basis for relief, they do require that the

pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it

rests." *Baldwin Cnty. Welcome Ctr. v. Brown,* 466 U.S. 147, 149–50 n. 3 (1984) (quotation and

citation omitted). A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff

will ultimately prevail but whether the claimant is entitled to offer evidence to support the

claim.'" *Bell Atlantic v. Twombly,* 550 U.S. 544, 583 (2007) (quoting *Scheuer v. Rhodes,* 416

U.S. 232, 236 (1974)); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 684 (2009) ("Our decision in

*Twombly* expounded the pleading standard for all civil actions.") (internal citations omitted); *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal . . .* provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*.").

Following the *Twombly/Iqbal* standard, the Third Circuit applies a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Fowler,* 578 F.3d at 210. Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* A complaint must do more than allege the plaintiff's entitlement to relief. *Id.* However, this standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.'" *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly,* 127 S. Ct. at 1965); *see also Covington v. Int'l Ass'n of Approved Basketball Officials,* 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. . . . The pleading standard is not akin to a probability requirement, . . . to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citations omitted)). Nonetheless, a court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429–30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. *Hedges v. U.S.,* 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991)). Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as

exhibits, and matters of judicial notice. *Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.,* 181 F.3d 410, 426 (3d Cir. 1999).

Plaintiff in this matter is proceeding, *pro se.* "The obligation to liberally construe a *pro se* litigant's pleadings is well-established." *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) (citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)); *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972)). "Courts are to construe complaints so 'as to do substantial justice,' Fed. R. Civ. P. 8(f), keeping in mind that *pro se* complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004). "Liberal construction does not, however, require the Court to credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). "[T]here are limits to [the courts'] . . . flexibility. . . . [P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "Even a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs*, 984 F. Supp. 2d at 282 (citing *Milhouse v. Carlson,* 652 F.2d 371, 373 (3d Cir. 1981)).

III. ANALYSIS

A.  § 1981 Discrimination (Count II)

None of the Counts of Plaintiff's Amended Complaint allege separate, claim-specific facts, instead incorporating the general statement of facts set forth above. The Court therefore construes Plaintiff's § 1981 discrimination claim, and other claims, as based on the circumstances surrounding Plaintiff's May/June 2015 application for a residency position at RWJMS.

1. As to All Defendants

"In order to state a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (quotation omitted). In the present motion, Defendants contend that Plaintiff has failed to allege the second and third elements in the Amended Complaint.

Looking to the second element, an inference of intent by the defendant to discriminate against the plaintiff on the basis of race can "be supported in a number of ways, including, but not limited to, comparator evidence, evidence of similar racial discrimination of other employees, or direct evidence of discrimination from statements or actions by [plaintiff's] supervisors suggesting racial animus." *Golod v. Bank of America Corp.,* 403 Fed. App'x 699, 702 n. 2 (3d Cir. 2010) (citing *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 511–12 (2002)).[7]

The Amended Complaint is replete with conclusory allegations of wrongdoing by the Defendants. Defendants Fyfe-Kirschner and RWJMS are alleged to have been aware of Plaintiff's legal action against Mount Sinai and to have changed the application requirements for the September 2015 residency advertisement to "exclude" Plaintiff. Am. Compl. at ¶ 17. All Defendants are alleged to have "participat[ed]" in the exclusion of Plaintiff because of "the ingrained systemic institutional character of discrimination in employment, especially in professional field of medicine," *id.* at ¶ 19, and to have "refus[ed]" to hire Plaintiff "due to . . .

_____

[7] Plaintiff may, but is "not required to plead comparator evidence to support an inference of discrimination." *Golod*, 403 F. App'x at 703 n. 2 (citing *Swierkiewicz,* 534 U.S. at 511–12 (2002)).

illegal coordination with [Plaintiff's] former employer." *Id.* at ¶ 21. Defendant RWJMS, and also

potentially the other Defendants, are further alleged to have "consent[ed]" to Plaintiff's

exclusion from the profession of medicine by "'White' or 'Caucasian' owned and operated

business[es]," "sabotaged" her professional career, "facilitated impermissible retaliation" against

Plaintiff, and "blacklist[ed]" Plaintiff from her chosen profession. *Id.* at ¶ 21, 22, 23. At the stage

of a motion to dismiss, however, the Court need not credit these bare legal conclusions and bald

assertions, and so disregards them. *In re Burlington Coat Factory,* 114 F.3d at 1429–30. *See also*

*United States v. City of Philadelphia*, 644 F.2d 187, 204 (3d Cir. 1980) (even under the pre-

*Twombly* and *Iqbal* standard, "[t]he rule is well established in this circuit that a civil rights

complaint that relies on vague and conclusory allegations does not provide 'fair notice' and will

not survive a motion to dismiss").

The only actual conduct of Defendants alleged to have been discriminatory in the

Amended Complaint is (1) Defendants' taking down in May 2015 of a job posting for which

Plaintiff was facially qualified and subsequent relisting in September 2015 of substantially the

same posting, with requirements for additional documentation from past employers that would

allegedly "exclude" Plaintiff, Am. Compl. ¶ 16, and (2) Defendant RWJMS's subsequent refusal

to hire Plaintiff. *Id.* at ¶ 21. Although the Amended Complaint is not clear how the requirement

of additional documentation "excluded" Plaintiff from employment at RWJMS, reading the

Complaint broadly and construing the allegations in the manner most favorable to Plaintiff, the

requirement of additional documents from applicants' past employers could "exclude" Plaintiff

from eligibility because Plaintiff's past employer, Mount Sinai, had previously refused to

provide Plaintiff's employment record, and Defendants, through Defendant Fyfe-Kirschner, were

aware of this fact. Accordingly, the Amended Complaint may be read to allege that by requesting

documents from Plaintiff, which Defendants were aware Plaintiff likely could not provide, due to the alleged intransigence of her previous employer, Defendants could "exclude" Plaintiff from the position for which she was allegedly otherwise qualified.

Regardless of the manner in which Defendants are alleged to have discriminated against Plaintiff, however, the Amended Complaint plainly lacks any non-conclusory allegations of Defendants' motive for doing so; the critical element of intent is missing from Plaintiff's claim. Plaintiff does not, for example, allege any comments by Defendants evincing racial animus. *See Okpor v. Kennedy Health Sys.*, No. CIV.A. 10-1012, 2010 WL 3522784, at *3 (D.N.J. Sept. 2, 2010) ("Although the factual allegations in support of the second element of the claim related to intentional discrimination are thin, construing the complaint liberally, Defendants' racial comment may be enough to establish intentional discrimination."). Nor does Plaintiff allege disparate treatment compared to non-minority job applicants. *See Nahas v. Shore Med. Ctr.*, No. CIV. 13-6537, 2015 WL 3448021, at *5 (D.N.J. May 29, 2015), *on reconsideration in part,* No. CV 13-6537, 2016 WL 1029362 (D.N.J. Mar. 15, 2016) ("allegations are sufficient to suggest that Plaintiff was treated differently than other non-Arab physicians at SMC."). Nor has Plaintiff identified any factual or procedural inconsistencies or irregularities, which might suggest an ulterior motive of racial animus. *See Stewart v. Rutgers State Univ.,* 120 F.3d 426, 433–34 (3d Cir. 1997) (holding that factual and procedural inconsistencies, as well as "arbitrary and capricious conduct on the part of the [professional committee]" in reviewing a black applicant's application for tenure constituted "sufficient evidence upon which a jury could conclude that ... [the] tenure denial may have stemmed from discrimination based on race.") (internal quotation marks omitted) (citing *Metro. Hous. Dev. Corp.,* 429 U.S. at 267). Plaintiff, for example, pleads that RWJMS took down the job posting to which she had applied in May 2015; that, at the time,

Defendant Kelly informed her the delisting was due to lack of funding; and that a substantially similar posting requesting additional documentation was posted in September 2015. Although Plaintiff plainly believes that it was inconsistent or irregular for Defendants to remove a job posting in May 2015, claiming funding difficulties, only to relist a similar posting four months later in September 2015, the temporal sequence of these events alone is insufficient to plead that Defendants possessed a retaliatory or discriminatory intent. The Amended Complaint does not allege that what Defendant Kelly told her about the residency position being canceled for lack of funding was untrue, or that the policy of withdrawing and relisting an advertisement over a four month period was arbitrary, capricious, or diverged from RWJMS's past practice or treatment of other residency positions.

Plaintiff would have the court infer racial animus from the simple allegation that she is of Indian national origin, Am. Compl. ¶ 6, and her rambling allegations that she has been excluded from "'White' or 'Caucasian' owned and operated business" with "consent from 'White' individuals of uninvolved organizations" such as RWJMS. *Id.* at ¶ 22. These allegations are plainly insufficient to survive a motion to dismiss because they do not suggest a connection between Plaintiff's Indian national origin and Defendants' conduct such that discriminatory intent on the part of Defendants might be inferred. *See Morton v. Arnold*, 618 F. App'x 136, 141–42 (3d Cir. 2015) ("Morton alleges that 'at all times relevant . . . [she] was discriminated against by Defendants because she is African–American and treated differently than her white colleagues.' In support of this allegation, Morton avers solely that she 'is the only black female supervisor.' Aside from these statements, none of Morton's averments contain facts supporting an inference that Morton was terminated on the basis of race, and the complaint never intimates why Morton believes that race motivated the County's actions. . . . Under these circumstances,

Morton has failed to raise a plausible right to relief under § 1981, and the claim was properly dismissed."); *Doe v. Sizewise Rentals, LLC*, 530 F. App'x 171, 174 (3d Cir. 2013) (plaintiff's bald assertions of "racial plots" "favored non-minority employees" "perscut[ion]" of plaintiff "along with other Hispanics and Blacks" were conclusory, and thus although complaint was "replete with details" of workplace grievances it was "devoid . . . of factual allegations that . . . defendants acted with any racially discriminatory animus.").[8]

In short, there is a complete absence of factual allegations pleading an intent to discriminate by Defendant Kelly, Defendant Fyfe-Kirschner, or Defendant RWJMS. Plaintiff therefore has not pleaded the second element of a claim for § 1981 discrimination. In such circumstances, dismissal is appropriate. *Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 n. 5 (3d Cir. 2015), *cert. denied sub nom. Boseski v. Borough of N. Arlington, N.J.,* 137 S. Ct. 200, 196 L. Ed. 2d 130 (2016) (plaintiff "has not stated a claim against any defendant under 42 U.S.C. § 1981, because she does not allege that any defendant's actions were motivated by racial discrimination."). Because Plaintiff has failed to allege sufficient factual content to "'nudg[e]' [her] claim of purposeful discrimination 'across the line from conceivable to plausible,'" her Complaint cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 683.

   2.  Individual Defendants

---

[8] *See also Gross v. R.T. Reynolds, Inc.*, 487 F. App'x 711, 716 (3d Cir. 2012) (affirming dismissal because "[w]hile the Amended Complaint alleges an abundance of wrongdoing by [defendants], it fails to allege any facts supporting the conclusion that those acts were motivated by discrimination on the basis of race. Instead, it alleges a series of unfortunate events and then states, in conclusory fashion, that the reason for those events is that [defendants] harbored discriminatory animus towards [plaintiffs]."); *Id.* at 718 ("assertion that the University 'knowingly subjected him to disparate treatment . . . because he is a minority' is nothing more than a legal conclusion couched as a factual allegation, which, under Rule 8, is insufficient to defeat a motion to dismiss."); *Kasper v. Cty. of Bucks*, 514 F. App'x 210, 215 (3d Cir. 2013) (dismissing employment discrimination complaint for failure to plead connection to racial animus); *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 703 (3d Cir. 2010) (same).

Although the Court's finding of the absence of any intent to discriminate applies equally to the individual defendants as to RWJMS, the Court notes that the allegations against Defendants Kelly and Fyfe-Kirschner, individually, are particularly deficient. The Third Circuit has held that "[i]f individuals are personally involved in the discrimination against the [plaintiff], and if they intentionally caused [an infringement of rights protected by Section 1981], or if they authorized, directed, or participated in the alleged discriminatory conduct, they may be held liable." *Al–Khazraji v. Saint Francis Coll.,* 784 F.2d 505, 518 (3d Cir. 1986). The only conduct of Defendant Kelly alleged in the Amended Complaint is his informing Plaintiff in May 2015 that no new residents would be hired at RWJMS for the July 2016 to June 2017 term due to a lack of funding. Am. Compl. ¶ 16. The Amended Complaint alleges that this later proved not to be the case as RWJMS relisted a residency position for the July 2016 to June 2017 term in September 2015. As noted above, however, Plaintiff does not allege that what Defendant Kelly told Plaintiff was false at the time he informed her, or that he knew or should have known it to be false at the time he told her, and certainly does not allege that Defendant Kelly conveyed any information to her, false or otherwise, out of racial animus or with an intent to discriminate against her on the basis of her race.

The allegations against Defendant Fyfe-Kirschner are equally deficient, albeit in a different manner. Defendant Fyfe-Kirschner is actually alleged to have *agreed* with Plaintiff that Plaintiff's former employer Mount Sinai had discriminated against Plaintiff, to have believed that Plaintiff was the most qualified applicant for the residency position with RWJMS, and to have found Mount Sinai's negative summative evaluation of Plaintiff to be implausible. Am. Compl. ¶¶ 18, 19, 21. In short, far from pleading animus against Plaintiff on Defendant Fyfe-Kirschner's part on account of Plaintiff's race, the Amended Complaint clearly pleads that

Defendant Fyfe-Kirschner was favorably disposed to Plaintiff. To counter this fact, Plaintiff merely observes that it is "ironic[]" that Defendants allegedly harbored a secret intent to racially discriminate against her, given that all of Defendant Fyfe-Kirschner's outward conduct evinced no such prejudice. *Id.* at ¶ 19. The Court disregards these conclusory allegations that Plaintiff is aware of the underlying truth of Defendant Fyfe-Kirschner's intent, despite all outward manifestations to the contrary.

Finally, considering the allegations against both of the individual defendants in sum, the Court notes that it is clear that there is no allegation that Defendant Kelly or Defendant Fyfe-Kirschner authorized, directed, or participated in either the decision to take down and relist the residency position between May 2015 and September 2015, or the decision not to hire Plaintiff: the only even potentially discriminatory conduct alleged in the Complaint. While Defendant Kelly "informed" Plaintiff about the delisting, and Defendant Fyfe-Kirschner shared her opinions with Plaintiff about Plaintiff's hiring, the Amended Complaint is devoid of any allegations that either played a role in causing the delisting or in rejecting Plaintiff's application. The Amended Complaint does not specify in what manner Plaintiff became aware that she would not be hired, who delivered such news, and what if any reasons accompanied her rejection. The allegations of the individual defendants' personal involvement in any discrimination against Plaintiff are thus plainly deficient.

B. Retaliation - Counts I (Title VII), II (§ 1981), and III (NJLAD)

In addition to the discrimination claims discussed, *supra*, § 1981 also encompasses retaliation claims. *CBOCS West, Inc. v. Humphries,* 553 U.S. 442, 451 (2008). The Court therefore construes Count II of Plaintiff's Complaint to raise a § 1981 retaliation claim. Accordingly, the Amended Complaint raises retaliation claims under Section 1981 (Count II),

NJLAD (Count III), and Title VII (Count I). The Court construes Defendants' motion as seeking dismissal on all bases.

1. Timeliness of Title VII Claim

As a threshold matter, Defendant RWJMS moves to dismiss Plaintiff's Title VII claim against it as time-barred. A federal suit under Title VII must be filed within ninety days after the plaintiff's receipt of a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1). The Third Circuit has observed that the ninety-day limitation "is akin to a statute of limitations rather than a jurisdictional bar." *Seitzinger v. Reading Hosp. & Med. Ctr.,* 165 F.3d 236, 239–40 (3d Cir. 1999). When, as here, a court has permitted the plaintiff leave to amend her complaint, a statute of limitations "may be trumped by relating back," where the requirements of Rule 15(c) are met. *Mayle v. Felix,* 545 U.S. 644, 666 (2005).

Here, Plaintiff received a right-to-sue letter dated February 16, 2016, which the Court deems to have been received, pursuant to the three-day mailbox rule, on February 19, 2016. *Seitzinger*, 165 F.3d at 238–39 (where the parties fail to allege or introduce "sufficient evidence to identify the date on which [plaintiff] received the EEOC's right-to-sue letter[,]" courts "apply the Federal Rules' presumption that a party receives a document three days after it was mailed, *see* Fed. R. Civ. P. 6(e)"). Plaintiff first named RWJMS as a defendant more than ninety days later, in the Amended Complaint, filed on November 29, 2016. Plaintiff's failure to name RWJMS as a defendant within ninety days was the result of a mistake on Plaintiff's part in naming the incorrect Robert Wood Johnson-affiliated entity. Plaintiff initially sued RWJUH, not her prospective employer RWJMS.

Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading "relates back" to the date of a timely filed original pleading and is thus itself timely even though

it was filed outside an applicable statute of limitations. Where an amended pleading changes a party or a party's name, the Rule first requires that the party to be brought in by amendment "received such notice of the action that it will not be prejudiced in defending on the merits." Fed. R. Civ. P. 15(c)(1)(C)(i). Defendant RWJMS has not argued that its late notice of the action has given rise to any prejudice in defending on the merits, nor does this Court find any such prejudice. The record reflects that Plaintiff returned executed summons in this matter, certifying that service had been made on RWJUH and Defendants Kelly and Fyfe-Kirschner, who are employees of RWJMS. ECF No. 4. Although Defendants Kelly and Fyfe-Kirschner later contended that the persons upon whom service was made were not authorized to accept service for Defendants Kelly and Ffye-Kirschner individually, it is undisputed that they, as employees of RWJMS, became aware of this action as a result of the service of the original Complaint. ECF No. 8 (September 29, 2016 Letter from Counsel for Defendants Kelly and Fyfe-Kirschner contesting service).

Second, Rule 15(c) requires that "'the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.'" *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010) (quoting Fed. R. Civ. P. 15(c)(1)(C)(ii)). "The question under Rule 15(c)(1)(C)(ii) is not whether [plaintiff] knew or should have known the identity of . . . the proper defendant, but whether [the proper defendant] knew or should have known that it would have been named as a defendant but for an error. Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Id.* at 548 (emphasis in original). *See also id.* at 553-54 ("the question under Rule 15(c)(1)(C)(ii) is what the prospective defendant reasonably

should have understood about the plaintiff's intent in filing the original complaint against the first defendant.").[9] Accordingly, in this matter, the question before the Court is not whether Plaintiff knew or should have known that RWJMS, and not RWJUH, was her prospective employer and the proper defendant in this action, but rather, what the proper defendant knew or should have known.

Looking to what RWJMS knew or should have known, the Supreme Court has specifically held that, in the case of related entities with similar names, the "interrelationship and similarity heighten the expectation that [the proper defendant] should suspect a mistake has been made when [the named defendant] is named in a complaint that actually describes [the proper defendant's] activities." *Id.* at 556. Applying the Supreme Court's unambiguous standard in *Krupski* here, it is clear that Plaintiff's November 29, 2016 amendment to name RWJMS, instead of the interrelated and similarly named RWJUH, relates back, under Rule 15(c), to the filing of the original Complaint on May 18, 2016 — 89 days after Plaintiff is presumed to have received the right-to-sue letter and within the ninety-day period. *Krupski*, 560 U.S. at 554–55 (defendant should have known that it was not named as a defendant in the complaint only because of a misunderstanding of which similarly named, related entity was responsible for which business service). Defendant RWJMS's motion to dismiss Plaintiff's Title VII claim as time barred is

---

[9] The Supreme Court in *Krupski* explained the reasoning behind this rule:

> [R]epose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity. Because a plaintiff's knowledge of the existence of a party does not foreclose the possibility that she has made a mistake of identity about which that party should have been aware, such knowledge does not support that party's interest in repose.

*Krupski*, 560 U.S. at 550.

therefore denied, and the Court proceeds to consider Defendants' arguments challenging the sufficiency of the allegations of the retaliation claims in the Amended Complaint.

2. All Defendants

Retaliation claims raised under the NJLAD are analyzed under the same framework applicable to § 1981 cases, such that they may be considered together. *See Kant v. Seton Hall Univ.,* 289 Fed. Appx. 564, 567 (3d Cir. 2008). *See also Houston v. Dialysis Clinic, Inc.*, No. CIV.A. 13-4461 FLW, 2015 WL 3935104, at *10 (D.N.J. June 26, 2015). The legal standard for a retaliation claim under § 1981, in turn, is the same as that applicable to a Title VII retaliation claim. *See Cardenas v. Massey,* 269 F.3d 251, 263 (3d Cir. 2001). To establish a prima facie case of retaliation under § 1981, Title VII, or NJLAD, therefore, the employee must show that (1) he engaged in protected activity, (2) his employer took an adverse employment action against him, and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *Estate of Oliva v. N.J., Dep't of Law & Pub. Safety, Div. of State Police,* 604 F.3d 788, 798 (3d Cir. 2010) (same for section 1981); *Moore v. City of Philadelphia,* 461 F.3d 331, 340–41 (3d Cir. 2006) (same for Title VII); *Cardenas,* 269 F.3d at 263 (same for NJLAD). An employment action is considered adverse if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 68 (2006) (internal quotations omitted). The third element of "causal connection" "identif[ies] what harassment, if any, a reasonable jury could link to a retaliatory animus." *Moore,* 461 F.3d at 342.

Here, Plaintiff alleges that she engaged in protected activity when she filed an EEOC complaint and later initiated a civil action for discrimination against her former employer Mount Sinai, Am. Compl. ¶ 18, and that she suffered an adverse employment action when she was not

hired by Defendant RWJMS. *Id.* at ¶ 21. Defendants do not challenge that Plaintiff's conduct in complaining of discrimination at Mount Sinai was protected, nor do they dispute that a refusal to hire is an adverse employment action. Instead, Defendants move to dismiss on the ground that Plaintiff has not alleged any causal connection between the protected conduct at her former employer and the failure to hire by RWJMS.

Reviewing the allegations in the Complaint in the light most favorable to Plaintiff, it is nevertheless clear that Plaintiff makes no non-conclusory allegations of why RWJMS would take retaliatory action against Plaintiff for engaging in protected conduct at a previous employer (Mount Sinai), nor any allegations otherwise connecting RWJMS's refusal to hire Plaintiff to retaliatory animus. Plaintiff presents only a broad-ranging, unsupported conspiracy theory that her former employer Mount Sinai, is conspiring with other "White-owned" businesses, including RWJMS, to retaliate against Plaintiff. For example, the Amended Complaint alleges that RWJMS became aware of Plaintiff's protected conduct at her previous employer through Defendant Fyfe-Kirschner. Am. Compl. ¶ 18. As discussed above, however, Defendant Fyfe-Kirschner is alleged to have *supported* Plaintiff's legal actions against Mount Sinai and to have *supported* Plaintiff's candidacy for a residency position at RWJMS. *Id.* at ¶ 19.[10] Far from seeking to punish Plaintiff's action against Mount Sinai, Plaintiff alleges that Defendant Fyfe-Kirschner expressed her belief that the United States Courts would not condone Mount Sinai's

---

[10] Moreover, to the extent the Amended Complaint alleges retaliatory conduct by Plaintiff's former employer, Mount Sinai, it alleges no facts suggesting why or how Defendants might be held liable for Mount Sinai's conduct. Indeed, Mount Sinai is not a party to this action, and the Court takes judicial notice of the fact that Plaintiff has already pursued an action against Mount Sinai, in which summary judgment in favor of Mount Sinai was entered on March 27, 2015. *See Varughese v. Mount Sinai Med. Ctr.*, No. 12 CIV. 8812 CM JCF, 2015 WL 1499618, at *1 (S.D.N.Y. Mar. 27, 2015), *aff'd*, No. 15-1328, 2017 WL 2889483 (2d Cir. July 7, 2017).

discriminatory conduct and would not allow it to continue. *Ibid.* The only allegations purporting

to plead discriminatory intent are bare, conclusory allegations that this Court may not credit at

the stage of a motion to dismiss. *See, e.g.*, Am. Compl. ¶ 23 ("RWJMS is participating in

retaliation by participating in blacklisting and related activities against Varughese to exclude her

from her professional field of practice in Medicine.").

3. The Individual Defendants

(i) Title VII

Defendants also move to dismiss Plaintiff's Title VII claim as raised against Defendants

Kelly and Fyfe-Kirschner on the grounds that Title VII does not provide for individual liability.

The Court agrees that dismissal is appropriate. Accordingly, although the Court finds that

Plaintiff has failed to plead the element of causation in her Title VII claim, the Court also holds

that the absence of individual liability under Title VII is an alternative and sufficient basis for the

dismissal of Count I as raised against Defendants Kelly and Fyfe-Kirschner. *Emerson v. Thiel

Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) (explaining that "individual employees are not liable

under Title VII"); *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d

Cir.1996) (en banc) (same); *Webster v. Dollar Gen., Inc.*, 197 F. Supp. 3d 692, 694 n. 1 (D.N.J.

2016) (Title VII only prohibits discrimination by an "employer," and "creates no path for

liability against an individual employee").

(ii) NJLAD

Defendants similarly move to dismiss Plaintiff's NJLAD claim as raised against

Defendants Kelly and Fyfe-Kirschner on the grounds that NJLAD only provides for individual

liability under an aiding and abetting theory, and the Amended Complaint does not plead any

facts supporting aiding and abetting liability. *See Cicchetti v. Morris Cnty. Sheriff's Office*, 194

N.J. 563, 593 (2008) (individual liability under NJLAD can only arise through the "aiding and abetting mechanism"). As an initial matter, because Plaintiff's claim for race discrimination against RWJMS fails, there can be no claim for aiding and abetting against Defendants Kelly and Fyfe-Kirschner under NJLAD. *Ivan v. County of Middlesex,* 595 F. Supp. 2d 425, 463 (D.N.J. 2009) ("[F]or a defendant to be individually liable for aiding and abetting, the employer must also be liable under the LAD."). Even were the Court to have found an NJLAD violation by RWJMS in this case, however, the absence of allegations supporting aiding and abetting liability would provide an alternative, sufficient basis for dismissal of Count III against Defendants Kelly and Fyfe-Kirschner. "[I]n order to hold an employee liable as an aider or abettor, a plaintiff must show that "'(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.'" *Tarr v. Ciasulli*, 181 N.J. 70, 84, 853 A.2d 921, 929 (2004). There are no allegations supporting the second or third elements of aiding and abetting liability against either Defendant Kelly or Defendant Kirschner, warranting dismissal of Plaintiff's NJLAD claim as raised against each of them individually.

C. Count IV - RICO

Defendant moves to dismiss Count IV on the grounds that Plaintiff has failed to allege any of the elements of a civil RICO violation.

The RICO statute makes it unlawful

> • "for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce," 18 U.S.C. § 1962(a);

• "for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce," *id.* § 1962(b);

• "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...," *id.* § 1962(c); and

• "for any person to conspire to violate the provisions of [§ 1962(a), (b), or (c) ]," *id.* § 1962(d).

To state a claim for a violation of any of these provisions, Plaintiff must allege Defendants engaged in a "pattern of racketeering activity." *Zahl v. N.J. Dep't of Law & Pub. Safety Div. of Consumer Affairs,* 428 F. App'x 205, 211 (3d Cir.2011); *Banks v. Wolk,* 918 F.2d 418, 421 (3d Cir.1990). "Racketeering activity" consists of certain indictable offenses listed in § 1961(1), including mail and wire fraud. A pattern of racketeering activity requires at least two predicate acts of such activity. 18 U.S.C. § 1961(5).

The Amended Complaint does not specify which RICO provision Plaintiff intends to invoke. Sections 1962(a) (investment of racketeering income in the acquisition of an enterprise) and 1962(b) (acquisition of control of an enterprise in interstate commerce), however, are clearly inapplicable based upon the facts of this case. A plaintiff bringing a substantive RICO claim under § 1962(c) must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 362 (3d Cir.2010) (internal quotation marks omitted). A pattern of racketeering activity "requires at least two acts of racketeering activity within a ten-year period." *Id.* (quoting 18 U.S.C. § 1961(5)). Here, Plaintiff has failed to allege any acts of racketeering activity by any of the Defendants. Again, the only conduct alleged concerns the listing and delisting of the residency advertisement and the failure to hire Plaintiff, neither of which are among the indictable offenses listed in § 1961(1). Plaintiff's RICO claim thus fails as a matter of law.

Alternatively, Plaintiff's substantive RICO claim under § 1962(c) fails because the allegations of the Amended Complaint do not identify which defendant is the "person" subject to the statute. The RICO statute defines a "person" as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.* § 1961(4). Section 1962(c) requires that the RICO defendant be separate and distinct from the alleged RICO "enterprise." *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1411 (3d Cir. 1991). A claim that the corporation is the "person" and the corporation together with its employees and agents is the "enterprise," will not withstand a motion to dismiss. *Cedric Kushner Productions, Ltd. v. King,* 533 U.S. 158, 164 (2001) (citing *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir. 1994)). Similarly, a reference to the corporation as both the "person" and as the "enterprise" within a complaint is a fatal defect. *Zavala v. Wal–Mart Stores, Inc.,* 447 F. Supp. 2d 379, 383–84 (D.N.J. 2006). Here, the Amended Complaint merely alleges that "[t]he act of the defendants constituted unlawful activities in violation of Racketeer and Corrupt Organizations Act." Am. Compl. ¶ 34. The Amended Complaint therefore does not plead the critical distinction between the person and the enterprise involved in the alleged RICO violation, as it does not distinguish between RWJMS and the individual defendants, or, for that matter, between RWJMS, the individual defendants, and Plaintiff's former employer Mount Sinai. *See, e.g., Funayama v. Nichia Am. Corp.*, No. CIV.A. 08-5599, 2011 WL 1399844, at *23 (E.D. Pa. Apr. 13, 2011), *aff'd,* 482 F. App'x 723 (3d Cir. 2012) (denying plaintiff's request for leave to amend to add a RICO claim in the employment context where plaintiff failed "to allege that a corporate owner or employee distinct from the corporation itself conducted its affairs in a RICO

forbidden way. . . . [S]he makes no effort to allege that . . . any . . . employee is a RICO defendant separate and distinct from a RICO enterprise. Moreover, she provides in support of her RICO claim only vague allegations, many of which are unrelated in any way to her employment.").

Finally, in the absence of a substantive RICO claim, Plaintiff cannot state a viable RICO conspiracy claim under § 1962(d). *Lightning Lube v. Witco Corp.,* 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.").

### D. Count V - 18 U.S.C. § 241 Retaliation

Defendants move to dismiss Count V, Plaintiff's claim for retaliation under 18 U.S.C. § 241, for absence of a private right of action. 18 U.S.C. § 241 is a criminal statute, "which prohibits conspiracies undertaken to deprive an individual of his civil rights." *United States v. Piekarsky*, 687 F.3d 134, 144 (3d Cir. 2012). There is no private right of action under § 241 for a plaintiff to bring a civil suit. *Watson v. Washington Twp. of Gloucester Cty. Pub. Sch. Dist.*, 413 F. App'x 466, 468 (3d Cir. 2011) ("[plaintiff] does not have a private right of action to sue the defendants under 18 U.S.C. §[] 241"); *Carpenter v. Ashby*, 351 F. App'x 684, 688 (3d Cir. 2009) ("we agree with the District Court's dismissal of the 18 U.S.C. § 241 and § 242 claims. Neither statute creates a civil cause of action." (citing *United States v. Philadelphia,* 644 F.2d 187, 199 (3d Cir. 1980)). Plaintiff, therefore, cannot state a claim against Defendants under 18 U.S.C. § 241, and Count V of the Amended Complaint is dismissed.

### E. Joinder

Finally, Defendants move to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join Mount Sinai as a necessary party to this action. Because the Amended Complaint fails to state a claim, Defendants' motion under Rule 12(b)(7) is denied as moot.

## F. Leave to Amend

"[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (citing *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002)). The Third Circuit has instructed "'that district judges expressly state, where appropriate, that the plaintiff has leave to amend within a specified period of time, and that application for dismissal of the action may be made if a timely amendment is not forthcoming within that time.'" *Id.* (quoting *Shane v. Fauver,* 213 F.3d 113, 116 (3d Cir. 2000)). "[T]hese principles apply equally to *pro se* plaintiffs and those represented by experienced counsel." *Ibid.* "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Id.* at 236 (citing *Shane*, 213 F.3d at 115). *See Tate v. Morris Cty. Prosecutors Office*, 284 F. App'x 877, 879 (3d Cir. 2008) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 235–37 (3d Cir. 2008) ("district courts in this circuit must grant leave to amend before dismissing a *pro se* civil rights complaint, even if the plaintiff does not request it, unless amendment would be futile or leave to amend is not warranted for some other reason.").

Here, nothing before the Court suggests that Plaintiff has proceeded in bad faith, or that granting Plaintiff leave to amend in this matter would give rise to undue delay or otherwise

prejudice the Defendants. Accordingly, the Court grants Plaintiff leave to further amend[11] her

Amended Complaint within thirty (30) days on all counts that are insufficiently pleaded, and

where, therefore, the Court cannot determine at this juncture if those claims would be futile,

including Count I (Title VII Retaliation) as raised against Defendant RWJMS, Count II (§ 1981

Retaliation and Discrimination) as raised against all Defendants, Count III (NJLAD Retaliation)

as raised against all Defendants, and Count IV (Civil RICO) as raised against all Defendants.

Those counts are therefore dismissed without prejudice. The Court finds that amendment of the

remaining counts would be futile, and dismisses with prejudice Count I (Title VII Retaliation) as

raised against Defendants Kelly and Fyfe-Kirschner, due to the absence of individual liability;

and Count V (§ 241) as raised against all Defendants, due to the absence of a private right of

action.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff has failed to state a claim, Defendants' motion to

dismiss under Rule 12(b)(6) is granted, and the Amended Complaint is dismissed in its entirety.

Plaintiff is granted leave to amend, consistent with this Opinion within thirty (30) days. Because

the Court dismisses the Complaint on other grounds, the issue of joinder is moot.


Dated: _____9/26/2017_____          _____
                                                              /s/ Freda L. Wolfson
                                                       The Honorable Freda L. Wolfson
                                                       United States District Judge

---

[11] Although Plaintiff was previously granted leave to amend her Complaint to name RWJMS as a defendant, the substantive deficiencies in Plaintiff's allegations were not yet before the Court, making the grant here of further leave to amend appropriate.